**INSURANCE COMPANY OF NORTH AMERICA, Plaintiff,**

v.

**S/S "CAPE CHARLES," S/S "ALLIGATOR VICTORY," their engines, tackles, boilers, etc., Defendant.**

**MITSUI O.S.K. LINES, LTD., Defendant and Third-Party Plaintiff,**

v.

**MOMENTUM TRANSPORT, INC., Third–Party Defendant.**

**No. 92 Civ. 6184.**

United States District Court, S.D. New York.

Feb. 10, 1994.

Yorkston W. Grist, P.C. (David L. Mazaroli, of counsel), New York City, for plaintiff Ins. Co. of North America.

Kirlin, Campbell & Keating (Kevin J. Hartmann, of counsel), New York City, for defendant and third-party plaintiff Mitsui O.S.K. Lines, Ltd.

Dougherty, Ryan, Giuffra, Zambito & Barra (Peter J. Zambito, of counsel), New York City, for defendants S/S "Cape Charles," S/S "Alligator Victory."

Tell, Cheser & Breitbart (Paul Kovner, of counsel), New York City, for third-party defendant Momentum Transport, Inc.

## MEMORANDUM and ORDER

STANTON, District Judge.

Defendant and third-party plaintiff Mitsui O.S.K. Lines, Ltd. ("Mitsui") moves to strike the jury demand of the third-party defendant Momentum Transport, Inc. ("Momentum").

On August 14, 1992, plaintiff Insurance Company of North America ("INA") brought this admiralty action as the subrogated cargo insurer of Flag Imports, Inc. ("Flag"). INA paid Flag $102,924.60 to cover damages to a shipment of frozen frog legs that Mitsui transported from Mongla, Bangladesh to Flag's warehouse in Secaucus, New Jersey. Mitsui denies that the cargo sustained damage en route and has impleaded Momentum, a trucking company which performed the last short overland leg of the voyage. Momentum was not a party to the bill of lading. It carried the frog legs, in their sealed container, under a separate contract with Mitsui.

Mitsui argues that Momentum is not entitled to a jury trial because the third-party action lies within this court's admiralty jurisdiction. According to the Court of Appeals for the First Circuit, "it has long been the rule that contracts involving cargo are maritime only to the extent the cargo is on a ship or being loaded on or off a ship." *Luvi Trucking, Inc. v. Sea–Land Service, Inc.,* 650 F.2d 371, 373 (1st Cir.1981). The contract between Mitsui and Momentum would be mischaracterized as maritime. Momentum simply transported the cargo overland from Elizabeth to Secaucus, New Jersey: it had no contact with the ship and was not a party to the bill of lading.

Although the services rendered by Momentum were merely incidental to the ocean carriage from Mongla to Port Elizabeth, it "is well established that a 'contract, not maritime in itself, which is collateral to a

maritime contract does not by reason of its relation to such contract acquire a maritime character and is not ordinarily cognizable in admiralty.' " *Luvi Trucking, Inc.*, 650 F.2d at 374 (citation omitted). Whether or not the question might be viewed differently if Momentum's carriage had been under the bill of lading, in this case its connection with the shipment did not commence until after the' cargo was unloaded, and formed no part of maritime commerce. *See Sirius Ins. Co. (UK) v. Collins*, 16 F.3d 34, 36 (2d Cir.1994) (fundamental consideration giving rise to maritime jurisdiction is the protection of maritime commerce).

■ Nor can Mitsui's claim against Momentum properly be considered a maritime tort, since its alleged negligence occurred on land. *See Keene Corp. v. United States*, 700 F.2d 836, 843 (2d Cir.) ("Admiralty jurisdiction in tort exists when the wrong (1) took place on navigable waters ('situs') and (2) 'bear[s] a significant relationship to traditional maritime activity' ('status')."), *cert denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983).

■ Although Mitsui's claim is not cognizable in admiralty, the court may exercise supplemental jurisdiction over it, pursuant to 28 U.S.C. 1367. *See Roco Carriers, Ltd. v. M/V Nurnberg Express*, 899 F.2d 1292, 1295 (2d Cir.1990):

> The established rule of this Circuit has been that pendent party jurisdiction is available in admiralty cases in those instances in which the state law claim against the additional party arises out of a common nucleus of operative facts with the admiralty claim and the resolution of the factually connected claims in a single proceeding would further the interests of conserving judicial resources and fairness to the parties.

*See also Leather's Best, Inc. v. S.S. Mormaclynx*, 451 F.2d 800, 810 n. 12 (2d Cir.1971) ("the practical considerations which support the doctrine of ancillary jurisdiction in the context of civil impleader are equally persuasive on the admiralty side").

Mitsui's claim against Momentum and the underlying admiralty action arise out of the same shipment of frog legs. The resolution of both claims in a single proceeding serves both judicial economy and fairness to the parties.

■ The fact that the third-party claim arises in the context of an admiralty action does not deprive Momentum of its right to a jury trial. "It is elementary that the Seventh Amendment right to a jury is fundamental and that its protection can only be relinquished knowingly and intentionally. Indeed, a presumption exists against its waiver." *National Equipment Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir.1977) (citations omitted). *See also* 6 Wright & Miller, Federal Practice and Procedure § 1465 (2d ed. 1990), at 496–498 (no reason why jury cannot decide third-party action in admiralty case).

Accordingly, a jury will be impaneled for the trial. If INA prevails on the nonjury admiralty claim, the jury will determine whether Momentum is liable under the third-party complaint. Mitsui's motion to strike the jury demand is denied.

So ordered.